**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

  vs.                                                                                                                No. CR-04-667 WJ

D.M. "MOE" CAMILLI,

    Defendant.

**MEMORANDUM OPINION AND ORDER DISMISSING INDICTMENT
BASED ON POST-INDICTMENT DELAY**

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss for Pre- and Post-Indictment Delay (**Doc. 101**), filed March 4, 2011. After oral argument on the motion and having considered the parties' briefs and the applicable law, I find that Defendant's motion is well-taken with regard to prejudice resulting from post-indictment delay, and that the indictment shall be dismissed on that basis.

**Background**

On April 13, 2004, the United States ("Government") returned a two-count indictment against Defendant David "Moe" Camilli, alleging that he committed tax fraud under two separate violations of 26 U.S.C. § 7206(1). Defendant seeks dismissal of the Indictment for violations of his rights to due process and to a speedy trial, claiming that he has been substantially prejudiced by the Government's unjustified delays at both the pre- and post-Indictment stages of this case. Count 1 of the Indictment alleges that in May 1998, Camilli made false statements on his 1996 federal income tax return by underreporting his income from Cambro Construction, a business he and his brother owned and operated, which specializes in

pouring concrete.  Count 5 alleges that in March 1999, Camilli made false statements on his 1997 federal tax return by underreporting his income.

The theory of the Government's case is that Defendant was skimming money from his construction company and deposited them into a "secret" Cambro/Farm One account at Montwood National Bank ("Cambro account") which was known only to him.  Defendant claims that he used the account as a petty cash account to pay for business-related activity in order to keep concrete projects up and running.  Mr. Camilli bases his argument of pre- and post-indictment delay on the same facts, contending that the twelve-year delay from the start of the investigation until the Indictment was unsealed affected his ability to explain the business-related nature of a series of specific deposits and withdrawals concerning the Cambro account between June 1996 and December 1997.   Mr. Camilli states that it was not clear until June 2010 that the Government would be relying on deposits and withdrawals from this account in its allegations of underreporting, but by that time most of the bank's records had been destroyed.  He alleges prejudice in attempting to defend against fifteen-year old bank records which were destroyed as a matter of course after five years.   Further, Defendant claims he had no notice for three years that the account was in question.  Mr. Camilli contends that the alleged delay has deprived him of a defense built upon specific employment and financial documents and reliable witness recollections.  At trial, the Government would be able to present evidence related to cash disbursements from various checking accounts, but he would not be able to provide corroborating evidence and witness testimony that would justify the use of the cash disbursements for legitimate business-related purposes.  Mr. Camilli also claims that the passage of time has also affected the ability to locate Cambro Construction customers and employees of certain construction projects for that period of time, who would refute the Government's charges

and testify that the account was used as a cash account to keep jobs running. One such potential witness is Raul Chavira, who worked as a Cambro foreman and who has since died. Another example is the temporary employment agency (Odyssey Employment), on which Cambro Construction relied for staffing on particular jobs and which records would show a cash flow that was necessary for the number of workers hired from that agency. Odyssey has since gone out of business.

The investigation into Mr. Camilli's activities related to this case began in the summer of 1998. The Indictment was returned in April 2004, and was sealed until March 2010. *See* Doc. 5. The Government contends that the length of time it took to investigate this case did not violate due process, and that on the specific facts of this case, even though the indictment was under seal for six years, that delay did not violate Defendant's right to speedy trial because the parties were attempting to negotiate a plea even as late as fall of 2009. For reasons given below, the Court accepts the Government's argument with regard to pre-indictment delay, but finds that plea negotiations do not justify the delay after Defendant was indicted.

## Discussion

Mr. Camilli contends that his right to a speedy trial has been violated based on Fifth Amendment due process as well as under the Sixth Amendment. Claims of pre-indictment delay are considered under the Fifth Amendment, while claims of post-indictment delay are considered under the Sixth Amendment. *U.S. v. Bishop*, 629 F.3d 462, 466 (5th Cir. 2010). In addition to requesting dismissal of the indictment due to a violation under the Fifth and Sixth Amendments, Defendant also requests dismissal under Rule 48(b) of the Federal Rules of Criminal Procedure. Rule 48 permits a district court to dismiss an indictment when "unnecessary delay occurs in . . . bringing a defendant to trial." The phrase "unnecessary delay" as used in Rule 48(b) is not

specifically defined in Rule 48 or elsewhere in the Federal Rules of Criminal Procedure. However, in determining whether to exercise their discretionary power to dismiss pursuant to Rule 48(b), courts traditionally have looked to the same factors as those considered by courts in cases involving constitutional issues of denial of a speedy trial. *See United States v. Becker*, 585 F.2d 703, 708 (4th Cir. 1978) (applying the *Barker* speedy trial factors to a Rule 48(b) analysis). For this reason, the Court addresses Defendant's Rule 48 arguments within the context of the constitutional analysis.

**I.     Pre-Indictment Delay (Fifth Amendment Due Process)**

Defendant contends that the pre-indictment delay of about five years (from 1998 to 2004) violates his Fifth Amendment Right to Due Process. Statutes of limitations are the primary means of protecting a defendant from prejudice due to pre-accusation delays. *See United States v. Marion*, 404 U.S. 307, 323 (1971). However, statutes of limitations do not "fully define (defendants') rights with respect to the events occurring prior to indictment." *United States v. Lovasco*, 431 U.S. 783, 789 (1977).[1] The Due Process Clause has a limited role to play in protecting against oppressive delay. *Id*. The test in the Tenth Circuit to determine whether a delay in bringing criminal charges violates due process requires that a defendant must prove that: (1) the delay resulted in substantial prejudice to his rights, and (2) the Government intentionally delayed prosecution in order to gain a tactical advantage. *U.S. v. Wood*, 207 F.3d 1222, 1234 (10th Cir. 2000); *U.S. v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006). Thus, Camilli must show both prejudice and that the delay was carried out to gain a tactical advantage;

---

[1] The statute of limitations for prosecutions under § 7206(1) is six years, and thus the limitations period would have expired on Count 1 on May 11, 2004; and for Count 5 on March 17, 2005.

4

*Lovasco*, 431 U.S. at 790 (Fifth Amendment Due Process Claim must consider both prejudice to the defendant and the reasons for the delay).  This analysis is fact-specific. *Marion*, 404 U.S. at 324-25.  The reason for the delay is as critical as any prejudice the delay causes defendant. Investigative delay, as opposed to intentional delay undertaken to gain tactical advantage, does not violate due process.  *Lovasco*, 431 U.S. at 796 (holding that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time).  Defendant does not dispute that the indictment was filed within the six-year statute of limitations under 26 U.S.C. §6531(5).  Rather, his argument is based solely on a due process theory.

      The delay at issue here spanned from from 1999 to 2004.  Defendant was advised he was the subject of a criminal tax investigation in May 1999.   Government agents pursued an active investigation from 2000 to 2002.  Negotiations to resolve this case started in October 2003, before the Indictment was handed down, but these efforts proved to be unsuccessful.  A federal grand jury heard witness testimony during 2002 and 2003.  In October 2003, parties met and the Government told defense counsel that the investigation was largely completed and invited them to participate in the calculation of the most accurate set of income and tax loss figures possible. Govt's Ex. 1.[2]  In January 2004, the parties exchanged information concerning the calculation of the amount of income that Mr. Camilli allegedly diverted from Cambro Construction in 1995, 1996 and 1997.  Govt's Ex. 2.  At the end of January 2004, defense counsel proposed a pre-Indictment guilty plea using a $15,000 tax liability figure.  Govt's Ex. 3.  By way of a letter to defense counsel on March 12, 2004, the Government questioned that figure.  Govt's Ex. 4.  As

---

[2] Except where specified, the exhibits referenced herein are attached to the Government's response to Defendant's motion.

these negotiations proceeded, the statute of limitations for the charged offense was fast approaching, forcing the Government to file an Indictment, then move to seal it.  Defendant did not oppose the motion.  *See* Doc. 2 at 2, ¶ 5 (relating conversation with defense counsel).

A.      No Substantial Prejudice

As an initial matter, Defendant suggests that a pre-indictment delay of five years is presumptively prejudicial, relying solely on a concurrence in a District of Columbia decision, *see Nickens v. U.S.*, 323 F.2d 808, 812-813 (C.A.D.C. 1963) (J. Wright, concurring).[3]  The Court rejects this suggestion, finding that there is no legal basis for grafting a section of post-indictment analysis onto a due process pre-indictment analysis.

Mr. Camilli argues that substantial prejudice has arisen from bank records which are incomplete or have been destroyed, as well as fading witness memories.   The Government sufficiently rebuts this argument, contending that withdrawals records from the Cambro bank account are not relevant to the prosecution's theory of the case because it does not concern the filing of false claims of deductions or exclusions.  There is some merit to this argument, since the amount of money owed to the Government is not an element of the alleged crime under 26 U.S.C. § 7206(1), only that an individual knowingly made a false statement on his tax returns.

At the hearing, Defendant argued that the Government first narrowed its focus of alleged conduct in 1994 by disclosing the IRS' method of computing unreported income.  *See* App. D to Defts' Ex I (hearing exhibit, schedule of unreported income for 1996).  Defendant also contends that Government agents did not begin requesting his bank statements until after 2000, when the

---

[3] There is a general presumption which applies for *post*-indictment delays of over one year.  *See Doggett v. United States*, 505 U.S. 647, 652 (1992) (delay approaching one year generally found to be presumptively prejudicial).

banks had already started destroying customers' financial records. The Government, however, notes that the records which Mr. Camilli claims to have become lost or missing are his own records. It is clear that Mr. Camilli first learned that something was amiss by mid-1998 (at least by early 1999). It is hard to believe that an individual who discovers in 1998 that he is the target of a criminal tax investigation, does not take immediate steps to save all records having any connection with bank accounts. Thus, I am not convinced that Defendant has satisfied the first prong in the analysis.

B.      No Intentional Delay

Even if the Court assumes that Mr. Camilli has presented sufficient evidence that he was substantially prejudiced by the pre-indictment delay, he presents no evidence at all suggesting that the Government delayed prosecution in order to gain a tactical advantage. Most of the pertinent documents which are no longer available are bank records over which Defendant himself had control during the time he first learned that he was being investigated. While it is true that witness' memories fade with time, there is no evidence at all that the Government purposely stalled requests for information or dragged its feet in the investigation in order to gain a tactical advantage.

Accordingly, I find no merit to Defendant's claim of a constitutional violation based on pre-indictment delay. I find no substantial prejudice based on the destruction of documents which Mr. Camilli claims to be so important and which he can no longer recreate. These documents have questionable relevance to the Government's theory of liability. Defendant first learned of the investigation while he still had the opportunity to preserve them, but did not do so. Moreover, Defendant offers no evidence at all on concerning the other requirement in the analysis, that the Government intentionally delayed prosecution in order to gain a tactical

advantage.

## II.     Post-Indictment Delay (Sixth Amendment Right to Speedy Trial)

Defendant also contends that the post-indictment delay of over six years (from 2004 to 2010) violates his Sixth Amendment right to a speedy trial.

The Sixth Amendment guarantees "the right to a speedy . . . trial" in criminal prosecutions. U.S. Const. amend. VI. A Sixth Amendment speedy trial violation would require dismissal of the case with prejudice. *See Barker v. Wingo*, 407 U.S. 514, 522 (1972) ("The amorphous quality of the [Sixth Amendment speedy trial] right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried."). In determining whether this right has been violated, the court must balance the following four factors: (1) the length of the delay; (2) the reason for delay; (3) the defendant's assertion of his right; and (4) any prejudice to the defendant." *See Abdush-Shakur*, 465 F.3d at 465 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). No one of the factors is necessary or sufficient to conclude a violation has occurred. *Id*. Instead, the factors are related and must be considered together along with other relevant circumstances. *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995).

### A.     Length of Delay

The first factor, the length of the delay, is actually a dual inquiry. *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004). Only if the delay is "presumptively prejudicial" does the Court consider the remaining three *Barker* factors. *Barker*, 407 U.S. at 530. If the accused makes this showing, the Court must then consider, as one factor among several, the extent to which the delay "stretches beyond the bare minimum needed to trigger judicial examination of the claim."

*Doggett v. United States*, 505 U.S. 647, 652 (1992).  Delays approaching one year generally satisfy the requirement of presumptive prejudice.  *Id.* at 652 (observing that lower courts have generally found delay approaching one year to be presumptively prejudicial); *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (delays exceeding one-year threshold, are presumptively prejudicial and trigger the *Barker* analysis).  As a result the delay from 2004, when the Indictment was sealed, to the unsealing of the Indictment in 2010 is presumptively prejudicial and the first factor weighs against the Government.  The *Barker* inquiry next requires the Court to consider the extent to which the delay stretches beyond the bare minimum.  Delays attributable to the defendant do not weigh against the Government.  *Abdush-Shakur*, 465 F.3d at 465.  Defendant acknowledges that the most recent delay occurring after the indictment was unsealed is not attributable to the Government, and the Court agrees.  Accordingly, the Court will not factor that time period into this analysis.  Thus, the critical time period that the Court must consider is the approximately six-year period from 2004 when the Indictment was sealed until it was unsealed in 2010.  Considering this period lasted approximately six years, the first factor weighs against the Government.

B.      Reason for Delay

Defendant contends that the main reason for the delay was the Government's desire to hamper the defense.  Defendant contends that  plea negotiations broke down in August 2004, several months after the indictment was returned, and thus there was no reason after this point for the Government to keep the indictment sealed for six years.  The Government's position is that plea negotiations were continuing throughout the time the Indictment was sealed.   The following timeline represents events that are undisputed by the parties:

In April 2004, a few days before the Indictment was filed, counsel for the Government,

9

Jonathon Gerson, Esq. conferred with counsel for Defendant, Peter Schoenburg, Esq. on plea negotiations. It was understood that the Government would be free to move to unseal the Indictment at any time should it appear to the United States that negotiations were was not proceeding fruitfully, and that the period of time during which plea negotiations continued while the Indictment was sealed should be excludable delay for speedy trial purposes. See Doc. 2 at 2, ¶ 5 (Motion to Seal Indictment) (relating conversation with defense counsel) and Doc. 105 (Resp.) at 8.

The parties continued to negotiate after the indictment was filed. In July, 2004, defense counsel produced witnesses for interviews pertaining to cash expenditures allegedly incurred by Camilli on behalf of Cambro. Govt's Exs. 6 & 7. On August 4, 2004, defense counsel submitted a document regarding a cost analysis for Cambro construction jobs. The Government reviewed this document, and based on these new income figures, offered a new plea agreement. Govt's Ex. 8. On August 23, 2004, defense counsel responded with a detailed statement of stipulations to include in the plea agreement. Govt's Ex. 9. Defense counsel advised that before Defendant would agree to enter into a plea agreement, the Government would apply to the Department of Justice ("DOJ") for the approval of a single misdemeanor count of Willful Failure to Pay Tax (26 U.S.C. § 7203) or the equivalent. Defense counsel also represented that should Government's good faith effort to get this approval fail, Mr. Camilli would plea guilty to a single *felony* count. In either case, the parties agreed that the stipulations which were laid out in defense counsel's August 23, 2004 letter, would apply.

On September 8, 2005, the DOJ Tax Division refused to authorize Camilli's plea to a misdemeanor. Govt's Ex. 10. There is a time gap of almost two years from this point until June 20, 2007, when Mr. Gerson informed defense counsel that he would like to discuss the case. On

July 30, 2007, defense counsel drafted a plea agreement with stipulations and forwarded it to the Government.. The draft plea agreement contained the stipulations listed in defense counsel's letter of August 2004, including the stipulation that Defendant would plead guilty to a single felony charge in the event DOJ did not authorize a plea to a misdemeanor.

The draft plea agreement remained unconsummated, and there was no further activity in the case until January of 2009, when Mr. Gerson wrote to defense counsel saying that he had concluded the active litigation he had been involved in and he wanted to proceed with the case. Mr. Schoenburg responded to the letter, saying that he would contact Mr. Gerson in the middle of February to set up a meeting. Govt's Exs. 12 & 13. However, by May 2009, no meeting had taken place. On August 3, 2009, the parties met in an unsuccessful attempt to conclude a plea agreement.[4] On October 23, 2009, defense counsel orally advised the Government that Mr. Camilli would not accept *any* felony plea.

On March 2, 2010, less than 5 months after Camilli reneged on pleading guilty to a single felony count as he previously stipulated, the Indictment was unsealed on the Government's motion. Defendant was arraigned on March 18, 2010.[5]

Based on the time line presented above, there are two inordinately long periods which followed DOJ's rejection of the plea agreement during which nothing happened in this case: (1) from the rejection in September 2005 to June 2007 when Mr. Gerson informed Mr. Schoenburg

---

[4] At that meeting, Defendant's brother decided to accept a plea agreement, but Defendant did not.

[5] Trial was originally set for May 3, 2010, but since mid-April the trial has been continued five times as a result of motions filed by defense counsel, without objection by the Government. *See* Docs. 25, 27, 51, 92 and 99. As previously discussed, this time period will not be considered as delay attributable to the Government.

that he would like to discuss the case; and (2) from July 2007 when the draft plea agreement was forwarded to the Government to October 2009 when Mr. Schoenburg advised that Defendant would not plead to a felony.[6]  At the hearing, the Government stated that plea negotiations were ongoing during all this time, but no satisfactory explanation was given for the protracted delay during those two periods.  The Government had sole discretion over when plea negotiations would be considered unfruitful and should be terminated, as well as when to unseal the Indictment.  At any time during the period after DOJ rejected the misdemeanor plea, the Government could have given Defendant a deadline, and proceeded to unseal the Indictment.  In addition, when it became clear that Mr. Camilli was not interested in pleading to a felony, despite the fact that he had previously stipulated to doing so, the Government could have had the Indictment unsealed and moved ahead to trial.  Instead, the case lay dormant for *two* two-year periods, interrupted only by one month of "activity" from June to July 2007.

As a result, this second *Barker* factor weighs heavily against the Government.

C.      Defendant's Assertion of His Right

The touchstone for this factor is not whether a defendant files a motion to dismiss, but whether the defendant's conduct shows "a desire to go to trial with dispatch." *U.S. v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006); *see Barker*, 407 U.S. at 536, 92 S.Ct. 2182 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial."); *United States v. Tranakos*, 911 F.2d 1422, 1429 (10th Cir. 1990) ("we are unimpressed with a defendant who moves for dismissal on speedy trial grounds when

---

[6] One can arguably describe the time gap as continuing until March 2010, when the Government finally decided to unseal the Indictment.

his other conduct indicates a contrary desire").

Defendant claims that he believed a negotiation could be achieved, although he concedes that he did not assert his desire for a speedy trial. *See, e.g., U.S. v. Taylor*, 306 Fed.Appx. 492, 493, 2009 WL 32752, 1 (11th Cir. 2009) (If the defendant knew of the indictment years before he was arrested and waited until arrest to invoke his right to a speedy trial, the third factor would weigh heavily against the defendant). Thus, this factor weighs against Mr. Camilli.

D.  Prejudice to Defendant

This last factor is considered to be the most serious. *Barker*, 407 U.S. at 532 (inability of a defendant adequately to prepare his case skews the fairness of the entire system). In situations where a presumption of prejudice exists due to the Government's negligence and where this presumption has not been extenuated nor rebutted, courts excuse a defendant from making a particularized showing of prejudice. *Doggett v. U.S*., 505 U.S. 647, 657-658 (1992). The Court finds that the Government has not adequately rebutted a presumption that its negligence caused the delay and thus, Defendant need not make a particularized showing of prejudice, as the Government suggests.

Mr. Camilli claims prejudice on lost documentary evidence and faded witness memory, as previously discussed. During almost four years of the time from which Mr. Camilli first learned he was the target of the Government's investigation, there was no movement on this case. Prejudice resulting from loss of memory is not a certainty, since loss of memory "is not always reflected in the record because what has been forgotten can rarely be shown." *Id*. Also, the passage of time itself does not necessarily constitute prejudice. *U.S. v. Marion*, 404 U.S.

307, 320-322 (1971).[7]  Nevertheless, where no satisfactory reason has been given in this case for the long delay, it is reasonable to conclude that Defendant's defense would have been stronger with more recent memories, ncluding his own.  Defendant also claims that his defense is compromised by the death of his foreman, Mr. Chavira.  Death of a witness is not enough in itself to establish prejudice.  *See U.S. v. Tranakos*, 911 F.2d 1422, 1429 (10th Cir. 1990) (no prejudice where defendant failed to show causal relationship between witness death and claimed prejudice by describing exculpatory testimony "with particularity").  However, Defendant explains the significance of having the Cambro Construction foreman available to testify on the practical and customary uses for the Cambro account in question—which now is not possible because that witness has died.  The Court finds that prejudice has resulted from the delay because the passage of time has eroded memories and eliminated at least one potential witness. *See Barker,* 407 U.S. at 532 ("If witnesses die or disappear during a delay, the prejudice is obvious.").

Defendant also claims prejudice based on societal factors stemming from fear of potential disruption of employment, public scorn, drain on financial resources and from anxiety that goes with being a defendant in a criminal proceeding.  *See Moore v. Arizona*, 414 U.S. 25 (1973) (citing *U.S. v. Marion*, 404 U.S. at 320)).  The "public scorn" and societal factors do not

---

[7] *See U.S. v. Marion*, 404 U.S. 307 (1971):

> Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself.  But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case.

404 U.S. at 320-322.

factor in strongly here because the Indictment was sealed during the time the delays occurred, but Mr. Camilli and his family were fully aware of the charges hanging over him during the entire time.  Nevertheless, I find that this last *Barker* factor weighs against the Government.

## Conclusion

In sum, I find and conclude that the Government's delay during the pre-indictment period did not violate Defendant's Fifth Amendment rights.  However, I come to the opposite conclusion with regard to post-indictment delay.  Three out of the four *Barker* factors weigh against the Government.  The Court has considered all of these factors together, and with the relevant circumstances of the case, and I have determined that this delay violated Defendant's Sixth Amendment due process right to speedy trial.  The appropriate remedy for a violation of a Sixth Amendment right to a speedy trial is dismissal with prejudice.  Accordingly, Defendant shall be afforded this remedy in this case.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss for Pre-and Post-Indictment Delay (**Doc. 101**) is hereby GRANTED on the basis that the Government post-indictment delay violated Defendant's Sixth Amendment right to a speedy trial, and that as a result, the Indictment against Defendant is hereby DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE